## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DAVID JOHNSTON**,[1] <br><br> *Plaintiff*, <br><br> v. <br><br> **NATIONAL SECURITY AGENCY** <br> 9800 Savage Rd., Suite 6272 <br> Fort George G. Meade, MD 20755, <br><br> and <br><br> **UNITED STATES DEPARTMENT OF DEFENSE** <br> 1400 Defense Pentagon <br> Washington, D.C. 20301, <br><br> and <br><br> **PAUL NAKASONE,** in his capacity as <br> Director of the National Security Agency, <br> <u>Serve</u>: National Security Agency <br>  9800 Savage Rd., Suite 6372 <br>  Fort George G. Meade, MD 20755, <br><br> and <br><br> **SIMON "JOHN" T. (LNU),** in his <br> individual capacity and official capacity as <br> Officer In-Charge, Defense Intelligence <br> Senior Executive Service, <br> <u>Serve</u>: National Security Agency <br>  9800 Savage Rd., Suite 6372 <br>  Fort George G. Meade, MD 20755, <br><br> and <br><br> **RANDAL D. (LNU)**, in his individual <br> capacity and official capacity as Division <br> Chief of Space Weapons and Technology - <br> Georgia, | Civil Action No.: 1:23-cv-00613 <br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

---

[1] Contemporaneous with filing this Complaint, Plaintiff has also filed a motion to proceed pseudonymously as revealing his home address poses a risk to national security. *See* (ECF No. 2, Memorandum of Law).

<u>Serve</u>: National Security Agency
     9800 Savage Rd., Suite 6372
     Fort George G. Meade, MD 20755,

and

**TIMOTHY K. (LNU)**, in his individual
capacity and official capacity as Deputy
Commander of NSA Georgia,
<u>Serve</u>: National Security Agency
     9800 Savage Rd., Suite 6372
     Fort George G. Meade, MD 20755,

     *Defendants.*

## **COMPLAINT**

COMES NOW, Plaintiff David Johnston, by and through undersigned counsel, and files this Complaint against Defendants the United States Department of Defense, the National Security Agency, on the grounds and in the amount set forth as follows:

## **PRELIMINARY STATEMENT**

The COVID-19 pandemic is over. There is no basis in science, fact, or law upon which Defendants can rely in justifying their continued segregation, harassment, and disparate treatment of religious and/or disabled federal workers. It is indisputable that the COVID-19 vaccines do not work, masks do not work, and natural immunity reigns supreme in defending against coronavirus. Yet despite these facts, the NSA continues to target its religious and disabled employees, such as Plaintiff, for no reason other than his membership in a protected class. Perhaps no greater course of conduct exists that better illustrates the precise discrimination that federal law prohibits than the NSA's decision to target, harass, humiliate, threaten, and punish Plaintiff for no reason other than the fact that his religious beliefs do not align with the NSA's policy-based preferences concerning vaccination.

Boiled down to its essence, Plaintiff, and thousands of other religious and disabled men and women who serve our country in the DOD's NSA continue to endure unlawful workplace hostility, harassment, discrimination, and retaliation—all of which the NSA has committed against them in hopes that eventually, Plaintiff and others similarly situated will "break" and succumb to the NSA's arbitrary and capricious vaccination-related objectives. This action is filed as a result and to redress the NSA's continued refusal to adhere to the rule of law, including that which reminds us, "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021) (emphasis added).

## NATURE OF THE ACTION

1.     This action seeking declaratory and injunctive relief, monetary damages, and other appropriate relief is brought to redress Defendants' violations of Plaintiff's rights secured to him by the laws of the United States and statutory and common law of the District of Columbia.

2.     Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), Title I of the Americans with Disabilities Act as amended, 42 U.S.C. §§ 12101 *et seq*. ("ADA"), the Rehabilitation Act of 1973 § 501 *et seq*., ("Rehab Act"), and District of Columbia common law intentional infliction of emotional distress.

## PARTIES

3.     Plaintiff David Johnston is an adult resident of the State of Georgia and a Signals Analyst for the Department of Defense's National Security Agency.

4.     Defendant U.S. Department of Defense ("DOD") is an executive branch department of the federal government charged with coordinating and supervising all agencies and functions of the U.S. government directly related to *inter alia* national security.

5.     Defendant National Security Agency ("NSA") is part of the United States Department of Defense.

6.     Defendant General Paul Nakasone is the Director of the National Security Agency, which is a part of the United States Department of Defense. As NSA Director, General Nakasone has authority to supervise and implement or revoke all operations, functions, and policies of the NSA, which include the policies at issue in this Complaint. He is sued only in his official capacity.

7.     Defendant Simon "John" T. (LNU) is an employee of the DOD and NSA and serves as the Director of Workforce Support Activities. In this capacity, Defendant Simon "John" T. (LNU) implements and enforces all NSA COVID-19 related policies. Defendant Simon "John" T. (LNU) is sued in his individual capacity as well as his official capacity.

8.     Defendant Randal D. (LNU) is an employee of the DOD and NSA. Defendant Randal D. (LNU) is sued in his individual capacity as well as his official capacity as NSA's Division Chief of Space Weapons and Technology in Georgia.

9.     Defendant Timothy K. (LNU) is an employee of the DOD and NSA. Defendant Timothy K. (LNU) is sued in his individual capacity as well as his official capacity as NSA's Deputy Commander in Georgia.

## JURISDICTION

10.     Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117, both of which provide for original jurisdiction for Plaintiff's claims arising under the laws of the United States.

11.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims brought pursuant to the D.C. Code and District of Columbia common law, in that such claims are so closely related to Plaintiff's federal claims providing the basis for this Court's

original jurisdiction as to satisfy the same case or controversy requirement prescribed by Article III of the United States Constitution.

12.     In the alternative, this court has diversity jurisdiction over all claims alleged in this action in that Plaintiff is a Virginia resident and upon information and belief, all Defendants named in this action reside in the District of Columbia or the State of Maryland.

## VENUE

13.      Venue is proper pursuant to U.S.C. §1391 in that at least one Defendant is a resident of the District of Columbia, and all events giving rise to this action occurred in the District of Columbia unless otherwise stated.

14.     Venue is also proper pursuant to 42 U.S.C. § 2000e-(5)(f)(3) because the alleged unlawful employment practices were committed within this district, the employment records relevant to the alleged unlawful employment practices are maintained and administered in this district, and the District of Columbia has its principal office in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     On May 23, 2022, Plaintiff first contacted the NSA's Diversity, Equality, and Inclusion ("DEI") Office concerning discrimination and retaliation related to his employment.

16.     On May 24, 2022, the NSA's DEI and Plaintiff conducted an initial interview in regard to the same.

17.     On June 2, 2022, Plaintiff received a Notice of Right to File a Formal Complaint of Discrimination.

18.     On June 7, 2022, Plaintiff filed his formal discrimination complaint against the NSA.

19.     On June 7, 2022, the NSA acknowledged received of Plaintiffs formal complaint.

20.     On December 5, 2022, the NSA issued its Final Agency Decision ("FAD") regarding Plaintiff's formal complaint and advised Plaintiff had ninety (90) days to commence this action in federal court.

21.     Plaintiff files this action within the ninety (90) day requisite timeframe.[2]

22.     Plaintiff has satisfied all conditions precedent required to maintaining this action.

## STATEMENT OF FACTS

23.     Plaintiff is a federal employee within the DOD working for the NSA as a Signals Analyst.

24.     For more than 23 years, both as a uniformed servicemember and as a civilian, Plaintiff has dutifully fulfilled his obligations and performed the essential functions of his job in satisfaction of reasonable expectations, if not always in a manner that has exceeded reasonable expectations.

25.      From the time he began working for the NSA in November of 2009, Plaintiff was not required to become vaccinated against COVID-19, nor was he ever required to violate his sincerely held religious beliefs. But that all changed in September of 2021.

26.     In September 2021, nearly two years after the COVID-19 pandemic began, the NSA instituted a policy that required Plaintiff to become vaccinated against coronavirus and report his vaccination status to the Agency by November 11, 2021. The only exception to this was if Plaintiff obtained an approved accommodation or he had an accommodation request pending with the Agency.

---

[2] Calculating the three (3) day mail-period, the ninetieth (90) day after receiving his Final Agency Decision is March 8, 2023. Notwithstanding this, Plaintiff's Complaint is nevertheless timely as ninety days after December 5, 2022 is March 5, 2023, which falls on a Sunday. Therefore, Plaintiff has until 11:59 p.m. on March 6, 2023 to commence this action even if this Court did not adhere to *Case.*

27.    On November 4, 2021, Plaintiff submitted to the NSA a request for a religious accommodation based on his sincerely held religious beliefs.

28.    As of the date this action is commenced, **487 days** have passed since Plaintiff submitted his accommodation request to the NSA.

29.    As of the date this action is commenced, the Agency continues to refuse to grant or deny Plaintiff's religious accommodation request.

30.    There is no dispute as to the sincerity of Plaintiff's religious beliefs and as of the date this action is filed, the NSA has never challenged the religious nature of Plaintiff's beliefs, nor has the NSA challenged the sincerity with which Plaintiff holds his religious beliefs.

31.    After months of refusing to engage with Plaintiff concerning his request for an approved religious accommodation, Defendants' motive in refusing to respond to his request became readily apparent.

32.    The reason the NSA continues to refuse to respond to Plaintiff's accommodation request is because absent an approved accommodation request, Plaintiff is forced to work "in limbo" and constant concern as to whether he will be able to maintain his employment.

33.    Stated differently, Defendants intentionally refuse and continue to intentionally refuse to respond to Plaintiff's accommodation request because Defendants are aware that the environment in which Plaintiff is waiting for the proverbial "waiting for the other shoe to drop" is psychologically exhausting, demanding, and frightening. And, while in this state of mind, Defendants' harassing tactics carry much more weight and the likelihood that Defendants will be able to "break" Plaintiff into submission and coerce Plaintiff into submitting to their demands becomes much greater.

34.     Specifically, the NSA has demanded and continues to demand that Plaintiff violate his sincerely held religious beliefs as a condition precedent to his continued employment and to be able to remain free from discrimination, harassment, retaliation, and hostility in the workplace.

35.     If Plaintiff does not violate his sincerely held religious beliefs, the NSA will continue to engage in discriminatory, harassing, retaliatory, and hostile conduct towards him.

36.     Alternatively, the NSA perceives Plaintiff to be a disabled person infected with COVID-19 and as a result, the NSA has treated Plaintiff differently than non-disabled persons absent legal justification.

37.     The NSA discriminates, harasses, retaliates, and creates a hostile work environment for Plaintiff because of his sincerely held religious beliefs.

38.     Alternatively, the NSA discriminates, harasses, retaliates, and creates a hostile work environment for Plaintiff because Plaintiff is disabled or the NSA perceives Plaintiff to be a disabled person (as more fully explained below).

39.     NSA's policy-based preference is that all of its employees are vaccinated against COVID-19, without exception, even if the basis for not being vaccinated is grounded in Plaintiff's exercise of a fundamental right guaranteed to him under the Constitution or federal law—namely, the fundamental right to freely exercise his religion or the fundamental right to be free from discrimination on the basis of disability or perceived disability in the workplace.

40.     Of course, the NSA can accommodate Plaintiff and doing so would not impose upon it an undue hardship. Plaintiff worked for the NSA through the entirety of the COVID-19 pandemic without becoming vaccinated and he did so without issue.

41.     Plaintiff worked domestically and abroad and was even deployed by the NSA to support CENTCOM in Qatar.

42.     Plaintiff traveled throughout the United States and overseas during times of the pandemic where the risk of contraction and transmission was significantly higher than it the risk posed as of present, as well as at all times relevant as complained of herein.

43.     Moreover, the NSA's testing policy requiring only religious persons to test against COVID-19 every week and such a policy is not only facially discriminatory as non-religious persons are not required to test for COVID-19 every single week[3] is not an accommodation when vaccinated persons unquestionably can contract and transmit COVID-19 as well.

44.     The NSA refused to test non-religious employees despite such non-religious employees, on multiple occasions, contracting COVID-19 and transmitting the virus throughout the workplace.

45.     The NSA has singled out and continues to single out its religious employees in a multitude of ways.

46.     The NSA has singled out and continues to single out its disabled or "perceived-to-be" disabled employees in a multitude of ways.

47.     At all times relevant Simon "John" T. (LNU), Paul Nakasone, were directors, officers, employees and/or agents of the DOD and/or the NSA within the meaning of 42 U.S.C. § 12111(5).[4]

48.     In addition to its refusal to respond to Plaintiff's accommodation request, Defendants, by and through their directors, officers, employees, or agents, discriminated, harassed,

___
[3] Non-religious persons are not required to test for COVID-19 once a week, either. They are not required to test for COVID-19 at all.
[4] Any reference to "Defendants", "the DOD", or "the NSA" or any combination thereof shall be construed to encompass individual actors identified as Defendants in this action, in that such persons acts or omissions are imputable against the DOD and the NSA because the actions complained of herein occurred within the scope of their employment unless otherwise stated.

retaliated, and/or created a hostile work environment because of Plaintiff's sincerely held religious beliefs by:

   a.   Prohibiting Plaintiff from traveling for work;

   b.   Prohibiting Plaintiff from engaging in required trainings;

   c.   Forcing Plaintiff to reveal medical information because he is religious and logging such information flagging him as a religious person;

   d.   Requiring Plaintiff to wear a mask while not requiring others to wear masks and doing so in the absence of any policy requiring Plaintiff to wear a mask;

   e.   Forcing Plaintiff to wear visual markers that singled him out amongst his colleagues with the intent to embarrass and humiliate Plaintiff;

   f.   Refusing to allow Plaintiff to engage in mentoring and career development meetings;

   g.   Attempting to remove Plaintiff from his position of employment;

   h.   Retaining copies of medical records against Plaintiff's will;

   i.   Lying to Plaintiff;

   j.   Repeatedly threatening and intimidating Plaintiff for engaging in First Amendment protected speech by reciting factual information about the vaccines;

   k.   Convincing Plaintiff not to apply for promotions he was more than qualified for and that he, absent coercion, threats, intimidation, and harassment, would have applied for;

   l.   Manufacturing false bases to support a demand that Plaintiff attend counseling sessions with employee relations;

m. Publicly demonizing Plaintiff by stating that he (Simon "John" T.) would fire anyone who sought an accommodation because "if it were up to [him], he would force the vaccine on everyone.";

n. Threatening Plaintiff and other religious employees to the extent that the legal department had to intervene to cease the unlawful misconduct;

o. Intentionally creating a venomous and unhealthy work environment riddled with hostility and hate towards religious persons;

49.     The aforesaid conduct in paragraph 43 constitutes adverse employment action.

50.     Moreover, Defendants, discriminated against Plaintiff in violation of the ADA and the Rehab Act because Defendants perceived Plaintiff to be disabled.

51.     Defendants engaged in the aforesaid adverse employment action because Defendants perceived Plaintiff to be disabled.

52.     Specifically, Defendants perceived Plaintiff to be infected with the COVID-19 virus and COVID-19 virus is a serious illness which can have long term health effects on those infected with the virus.

53.     Plaintiff's perceived condition substantially limited his major life activities, which include without limitation, working, as he was required to leave work and ordered to remain out of work due to the NSA's perception that Plaintiff had COVID-19.

54.     As a direct and proximate result of Defendant's aforesaid adverse employment action taken against Plaintiff on the basis of Plaintiff's perceived disability, Plaintiff sustained damages.

55.    Specifically, Defendants, by and through their directors, officers, employees, or agents, discriminated, harassed, retaliated, created a hostile work environment and/or engaged in other adverse employment action because Defendants perceived Plaintiff to be disabled by:

    a.   Prohibiting Plaintiff from traveling for work;

    b.   Prohibiting Plaintiff from attending career development trainings;

    c.   Forcing Plaintiff to reveal medical information because he is religious while not requiring non-religious persons to report their medical information;

    d.   Requiring Plaintiff to wear a mask while not requiring others to wear masks and doing so in the absence of any policy requiring Plaintiff to wear a mask;

    e.   Forcing Plaintiff to wear visual markers that singled him out amongst his colleagues with the intent to embarrass and humiliate Plaintiff;

    f.   Attempting to remove Plaintiff from his position of employment;

    g.   Retaining copies of medical records against Plaintiff's will;

    h.   Lying to Plaintiff;

    i.   Publicly demonizing Plaintiff by stating that he (Simon "John" T.) would fire anyone who sought an accommodation because "if it were up to [him], he would force the vaccine on everyone.";

    j.   Threatening Plaintiff and other religious employees to the extent that the legal department had to intervene to cease the unlawful misconduct; and

    k.   Intentionally creating a venomous and unhealthy work environment riddled with hostility and hate towards religious persons.

56.    The aforesaid conduct in paragraphs 48 and 55 constitutes adverse employment action.

57.     Perhaps most egregious of all, each of the aforesaid violations of federal law occurred in furtherance of an arbitrary and capricious policy.

58.     Indeed, the COVID-19 vaccine does not prevent contraction or transmission of the virus, and the arbitrary, capricious, restrictions imposed upon religious and disabled or "perceived-to-be" disabled persons are nothing more than coercive tactics levied against persons whose exercise of fundamental rights conflict with the vaccination-based policy preferences Defendants hold.

59.     Such restrictions are unlawful and violate the laws on the grounds set forth as follows:

<u>**COUNT I**</u>
**RELIGIOUS DISCRIMINATION**
**Violation of Title VII**

60.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

61.     Plaintiff sincerely holds religious beliefs and is a member of a protected class based on his religion.

62.     Plaintiff is an employee within the meaning of Title VII.

63.     Defendant is an employer within the meaning of Title VII.

64.     Title VII forbids an employer from refusing a job to someone because of her need for religious accommodation, absent proof that granting the accommodation would cause it undue hardship. 42 U.S.C. §§ 2000e(j), 2000e- 2(a)(1); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015).

65.     This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious

observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

66.    A plaintiff can therefore make out a prima facie case under Title VII by showing (1) she held a bona fide religious belief, the practice of which conflicted with an employment duty; (2) the employer took adverse action—the acts articulated in paragraphs 48 and 55—because of the plaintiff's inability to fulfill the job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision. *See Abercrombie & Fitch*, 575 U.S. at 775.

67.    More specifically, courts and the EEOC have insisted that federal law can require employers to accommodate sincere religious objections to a loyalty oath—even when that oath might otherwise be required by state law. See EEOC Decision No. 85-13, 38 Fair Empl. Prac. Cas. (BNA) 1884 (1985) (concluding that an employer's refusal to accommodate an employee's request to sign an alternate oath for religious reasons violated Title VII).

68.    Here, Plaintiff advised Defendants of his sincerely held religious beliefs that (1) vaccination is not morally obligatory in principle and so must be voluntary; (2) there is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions; (3) a person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Christian moral teachings; (4) a person is morally required to obey his or her sure conscience; (5) and (6) his body is a temple and God intended him to utilize his immune system to fend off viruses and it is a sin to resort to medical intervention unless death or gross injury or disablement is likely to result.

69. Failure to abide by these sincerely held religious beliefs is a dereliction of Plaintiff's primary loyalty to God and, as such, Plaintiff could not comply with Defendants' mandatory COVID- 19 vaccination without violating his sincerely held religious beliefs.

70. Plaintiff informed Defendant of this conflict and expressly sought an accommodation.

71. Defendants refused to respond to Plaintiff's request for a religious accommodation to the vaccine mandate and instead, used this period within which Plaintiff was "pending in limbo" to take harassing, hostile, and discriminatory, and retaliatory actions against Plaintiff (as articulated above).

72. Because of this, Defendants began targeting Plaintiff and other religious employees by visibly labeling them with the intent to cause humiliation and with the intent to pressure Plaintiff and other religious employees into getting vaccinated against their will and in violation of their sincerely held religious beliefs.

73. The targeting, harassing, hostile, discriminatory, and retaliatory actions taken against Plaintiff were done so because Plaintiff and other similarly situated employees are religious, and through the adherence to their sincerely held religious beliefs, Plaintiff and other similarly situated employees were unable to satisfy Defendants' policy-based preferences concerning vaccination.

74. The aforesaid targeting, harassing, hostile, discriminatory, and retaliatory actions taken against Plaintiff and other similarly situated employees—including the refusal to permit Plaintiff and other similarly situated employees to travel and attending required trainings—constitute adverse action as it stifles their promotional opportunity and creates a hostile work

environment plagued with discrimination. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions includes "discriminating with respect to the "terms" and "conditions" of employment).

75.    Accommodating Plaintiff would not have imposed upon Defendants an undue hardship as evidenced by the fact that the restrictions do not accomplish anything and are mere nuisances imposed upon religious persons for the sake of harassing them.

76.    Defendants had actual knowledge of Plaintiff's religion, yet it discriminated against Plaintiff because of their motive to discriminate against religious persons as their religion stood in the way of Defendants' policy-based preference to obtain absolute vaccination compliance.

77.    Defendants' motivation to vaccinate as many employees as possible is evidenced by its repeated, incessant demands to get vaccinated, the lies Defendants spread concerning efficacy and safety, the refusal to acknowledge well-established science demonstrating the vaccines do not work and are unsafe, and the financial interests and gains resulting from pharmaceutical sales.

78.    Defendants knew Plaintiff had sincerely held religious beliefs that compelled Defendants to accommodate him; however, Defendants were motivated by a desire to avoid accommodating Plaintiff and as a result, Defendants took adverse employment action against Plaintiff by significantly altering his duties, refusing to allow him to travel or attend training, and engaging in hostile, discriminatory actions as articulated in paragraphs 48 and 55.

79.    Defendants made Plaintiff's religion a factor in making its employment decisions such as removing him from longstanding assignments due to his sincerely held religious beliefs and having duties stripped to only perform menial tasks—despite being promoted based on performance and work ethic just prior to submitting his accommodation request—because Defendants knew of Plaintiff's sincerely held religious beliefs before it took adverse employment

action against him because his religious beliefs did not align with Defendants' desire to vaccinate as many employees as possible.

80.    Other similar employers and government departments have not taken adverse employment action against employees with substantially similar or identical job duties and have otherwise not insisted on mandatory vaccination without allowing accommodations for objectors.

81.    As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Plaintiff sustained pecuniary and non-economic injuries in an amount that exceeds $75,000.00, including lost wages, benefits, retirement funds, the denial of promotional opportunity, medical bills incurred, humiliation, embarrassment, unnecessary pain and suffering, loss of professional relationships, attorneys' fees, and costs associated with this action.

**COUNT II**
**HOSTILE WORK ENVIRONMENT**
**Violation of Title VII**

82.    Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

83.    Plaintiff is a religious person as intended by Title VII.

84.    Plaintiff is qualified to perform the essential functions of his job with or without an accommodation.

85.    Plaintiff is an employee and Defendants are Plaintiff's employer as intended by Title VII.

86.    Defendants had notice of Plaintiff's sincerely held religious beliefs through actual or constructive knowledge, in that Defendants previously received Plaintiff's request for a religious accommodation which stated his sincerely held religious beliefs, reviewed his religious

accommodation request, ignored his request, and committed the acts or omissions articulated in paragraphs 48 and 55 against him as a result of his sincerely held religious beliefs.

87.    Defendants, with the intent to intimidate, ridicule, and insult, harass, scare, threaten, and/or coerce, created a hostile and abusive work environment by committing the acts or omissions articulated in paragraphs 48 and 55.

88.    The acts or omissions articulated in paragraphs 48 and 55 constitute adverse employment action.

89.    The acts or omissions articulated in paragraphs 48 and 55 were taken because Plaintiff is a religious person.

90.    Defendants did not commit the acts or omissions articulated in paragraphs 48 and 55 against non-religious persons.

91.    Defendants did not engage in adverse employment action against non-religious persons.

92.    The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and engaged in protected activity.

93.    The aforesaid adverse employment actions occurred because Plaintiff engaged in the protected activity of exercising his constitutionally protected right to freely exercise his religion.

94.    All allegations set forth herein violate Title VII.

95.    As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT III
### DISPARATE TREATMENT
### Violation of Title VII

96.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

97.     Plaintiff is a religious person and member of a protected class of persons as intended by Title VII.

98.     Plaintiff is qualified for his position of employment, and he has fully performed all duties in full satisfaction or in excess of Defendant's reasonable expectations as evidenced by Plaintiff's twenty-three (23) year employment record working for the NSA without issue.

99.     Despite being a qualified person and a member of a protected class, Defendants discriminated against Plaintiff and subjected him to disparate treatment due to his membership in a protected class of persons protected by Title VII.

100.    Specifically, Defendants engaged in the acts or omissions articulated in paragraphs 48 and 55 and such conduct was motivated in whole or in part by Plaintiff's membership in a protected class of persons.

101.    Defendants did not treat Plaintiff differently prior to knowing he sincerely held religious beliefs.

102.    Upon learning of Plaintiff's sincerely held religious beliefs, Defendants began treating Plaintiff differently and engaged in the harassing, discriminatory, disparate, retaliatory, and otherwise unlawful conduct articulated in paragraphs 48 and 55.

103.    Plaintiff's membership in a protected class of persons (religion) is the direct and proximate basis for which Defendants engaged in the harassing, discriminatory, disparate, retaliatory, and otherwise unlawful conduct articulated in paragraphs 48 and 55.

104.    The acts or omissions articulated in paragraphs 48 and 55 constitute adverse employment action.

105.    As a direct and proximate result of the adverse employment action Defendants took and continue to take against Plaintiff, Plaintiff sustained and continues to sustain economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

<h3 align="center">COUNT IV<br>DISPARATE IMPACT<br>Violation of Title VII</h3>

106.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

107.    Defendants' insistence that Plaintiff violate his sincerely held religious beliefs and become vaccinated deprives and tends to deprive Plaintiff and other similarly situated individuals of a workplace free from discrimination on the basis of religion in violation of Title VII's disparate-impact prohibition. 42 U.S.C. §§ 2000e-2(a)(2) & (k).

108.    Title VII makes it illegal for an employer to "limit, segregate, or classify his employees. . . in any way which would deprive or tend to deprive any individual of employment opportunities [such as travel and training]. . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(2).

109.    Defendants' employment practice of visibly labeling, verbally harassing, threatening, isolating, ostracizing, singling out, and restricting (in terms of travel and training) are employment practices that cause a disparate impact on the basis of religion.

110.   The exclusion of religious persons from the ability to travel constitutes an employment practice as intended by Title VII in regard to disparate impact claims.

111.   The exclusion of religious persons from the ability to participate in or attend training classes or courses constitutes an employment practice as intended by Title VII in regard to disparate impact claims.

112.   Threatening religious employees by telling them they "will be fired" or "lose their jobs" because they are exercising their fundamental right to free exercise constitutes an employment practice as intended by Title VII in regard to disparate impact claims.

113.   Objective, statistical data will demonstrate the vast disparity between the employees Defendants permit to travel and attend training sessions and employees who Defendants do not permit to travel and attend training sessions is staunchly along religious versus non-religious lines.

114.   Furthermore, the statute provides that an unlawful employment practice based on disparate impact is established when either an employee shows that an employment policy causes such a disparate impact and the employer fails to show "that the challenged practice is job related . . . and consistent with business necessity," or the employee shows there is an alternative way to serve the stated needs, but the employer refuses it. 42 U.S.C. § 2000e-2(k)(1)(A).

115.   Even if facially neutral, Defendants' categorical requirement that all employees become vaccinated without exception, notation, or addendum causes a disparate impact on Plaintiff (and any similarly situated religious individual who shares religious beliefs prohibiting vaccination) by forcing her to abandon her religious objections or endure repeated instances of harassment and retaliation as articulated above in paragraphs 48 and 55.

116.    Furthermore, Defendant's categorical position on vaccination is neither required for the job in question (Signals Analyst) nor consistent with business necessity. Moreover, Defendants refused the less restrictive but feasible option of allowing Plaintiff to work in a capacity consistent with CDC guidelines and in a manner he worked prior to the implementation of the arbitrary "Vaccinate or else" policy adopted by Defendants.

117.    Defendants have caused a disparate impact by engaging in the aforesaid conduct and through the enforcement of unlawful vaccination policies and other coercive, pressure-inducing tactics intended to force Plaintiff and other religious employees into becoming vaccinated in violation of his and their sincerely held religious beliefs.

118.    As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT V
### RETALIATION
### Violation of Title VII

199.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

200.    Defendants engaged in systemic retaliation against Plaintiff because he adhered to his faith and exercised his fundamental right to freely exercise his religion and abided by his sincerely held religious beliefs.

201.    As a result of Plaintiff's engagement in constitutionally protected activity, Defendants intentionally, deliberately, willfully, and in callous disregard, retaliated against Plaintiff by engaging in the acts or omissions articulated in paragraphs 48 and 55.

.

The acts or omissions articulated in paragraphs 48 and 55 constitute adverse employment action and otherwise constitute retaliatory unlawful conduct in violation of Title VII.

203.   Defendants' retaliation against Plaintiff as a result of adhering to his sincerely held religious beliefs and engagement in protected activity violates Title VII.

204.   As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT VI**
**PERCEIVED DISABILITY DISCRIMINATION**
**Violation of the ADA**

119.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

120.   At all times relevant to this action, Plaintiff was an employee within the meaning of 42 U.S.C. § 12111(4) and the NSA, a subdivision of the DOD, was Plaintiff's employer and a covered entity within the meaning of 42 U.S.C. § 12111(5).

121.   Plaintiff is a qualified individual within the meaning of 42 U.S.C. § 12111(8), in that Plaintiff can perform the essential functions of a Signals Analyst with or without a reasonable accommodation as evidenced by his twenty-three (23) history working for the NSA without issue and in full satisfaction of the NSA's reasonable expectations.

122.   At all times relevant to this action, Plaintiff was a disabled person within the meaning of 42 U.S.C. § 12102(2), in that Defendants perceived Plaintiff to have COVID-19, which

is a serious illness that can have long term health effects lasting more than six (6) months on those infected.

123.    COVID-19 substantially limits one or more major life activities, such as caring for oneself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.

124.    Defendants regarded Plaintiff as having such an impairment as defined by 42 U.S.C. §§ 121023(A) and as evidenced by Defendants' decision to take adverse employment action (as articulated above) against Plaintiff.

125.    Defendants placed Plaintiff refused to permit Plaintiff to travel and attend mandatory training sessions because it perceived Plaintiff was disabled.

126.    Vaccination is immaterial as to whether one is able to contract or transmit COVID-19, and this was known or should have been known based on a wealth of scientific studies and literature readily and publicly available evidencing the same to a reasonable degree of medical certainty.

127.    Plaintiff is disabled within the meaning of the ADA because Defendants perceived Plaintiff to have COVID-19 and COVID-19 is not a transitory or minor impairment but rather, a serious illness that can have long-term health effects lasting more than six (6) months on those infected with the virus.

128.    Irrespective of whether COVID-19 substantially limits one or more of Plaintiff's major life activities, Defendants nevertheless regarded Plaintiff as having a serious physical impairment because he was not vaccinated.

129.    Defendants took adverse employment action by harassing, discriminating, and retaliating, and disparately treating Plaintiff because Defendants perceived Plaintiff to have COVID-19.

130.    No facts exist as to a change in Plaintiff's performance, his ability to perform his duties at or in excess of expectations, or any other just basis to support a finding that Plaintiff was terminated for any non-discriminatory reason.

131.    The ADA prohibits Defendants from discriminating against Plaintiff because it perceived Plaintiff to be disabled in regard to *inter alia* the terms, conditions, and privileges of Plaintiff's employment.

132.    Defendants violated the ADA by unlawfully engaging in the conduct articulated in paragraphs 48 and 55.

133.    Defendant engaged in the conduct articulated in paragraphs 48 and 55 intentionally because it knew Plaintiff was disabled or perceived Plaintiff to be disabled.

134.    Defendants purposefully, willfully, intentionally, or recklessly discriminated against Plaintiff by engaging engaged in the conduct articulated in paragraphs 48 and 55 because Defendants perceived Plaintiff to be disabled.

135.    The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an accommodation and such an accommodation enabled Plaintiff to maintain his employment without capitulating to Defendants policy-based preferences concerning absolute vaccination compliance.

136.    All allegations set forth herein constitute disability discrimination in violation of the ADA.

137.    As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT VII
### HOSTILE WORK ENVIRONMENT
### Violation of the ADA

138.    Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

139.    Plaintiff is a disabled person or perceived to be a person as intended by the ADA.

140.    Plaintiff is qualified to perform the essential functions of his job with or without an accommodation.

141.    Plaintiff is an employee and Defendants are Plaintiff's employer as intended by the ADA.

142.    Defendants perceived Plaintiff to be disabled as evidenced by the change in working conditions and work environment upon learning that Plaintiff was not vaccinated.

143.    There is no rational basis for the differential treatment with which Defendants treated Plaintiff absent discriminatory intent.

144.    Defendants, with the intent to intimidate, ridicule, and insult, harass, scare, threaten, and/or coerce, created a hostile and abusive work environment by committing the acts or omissions articulated in paragraphs 48 and 55.

145.    The acts or omissions articulated in paragraphs 48 and 55 constitute adverse employment action.

146.     The acts or omissions articulated in paragraphs 48 and 55 were taken because Defendants perceive Plaintiff to be a person.

147.     Defendants did not commit the acts or omissions articulated in paragraphs 48 and 55 against non-disabled persons.

148.     Defendants did not engage in adverse employment action against non-disabled persons.

149.     The aforesaid adverse employment actions occurred because Defendants perceived Plaintiff to be a disabled person as intended by the ADA.

150.     The aforesaid adverse employment actions occurred because Defendants perceived Plaintiff to be a disabled person.

151.     All allegations set forth herein violate the ADA.

152.     As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT VIII
### DISPARATE TREATMENT
### Violation of the ADA

153.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

154.     Plaintiff is a disabled person or Defendants perceive Plaintiff to be a disabled person as intended by the ADA.

155.     As a person perceived to be disabled, Plaintiff is a member of a protected class (disability).

156.   Plaintiff is qualified for his position of employment, and he has fully performed all duties in full satisfaction or in excess of Defendant's reasonable expectations as evidenced by Plaintiff's twenty-three (23) year employment record working for the NSA without issue.

157.   Despite being a qualified person and a member of a protected class, Defendants discriminated against Plaintiff and subjected him to disparate treatment due to his membership in a protected class of persons protected by the ADA.

158.   Specifically, Defendants engaged in the acts or omissions articulated in paragraphs 48 and 55 and such conduct was motivated in whole or in part by Plaintiff's disability and membership in a protected class of persons (disability).

159.   Defendants did not treat Plaintiff differently prior to perceiving Plaintiff to be disabled.

160.   Upon learning Plaintiff was not vaccinated, Defendants perceived Plaintiff to be a disabled person who suffers from a serious mental or physical impairment—COVID-19.

161.   COVID-19 is not a transitory or minor impairment; rather, it is a serious illness that can have long-term health effects lasting more than six (6) months on those infected with the virus.

162.   Defendants perceived Plaintiff to suffer from COVID-19, which substantially limits one or more of Plaintiff's major life activities, such as caring for oneself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.

163.   Irrespective of whether COVID-19 substantially limits one or more of Plaintiff's major life activities, Defendants nevertheless regarded Plaintiff as having a serious physical impairment because he was not vaccinated.

164.    Defendants refused to permit Plaintiff to travel and attend mandatory training sessions because it perceived Plaintiff was disabled.

165.    Defendants engaged in the acts or omissions articulated in paragraphs 48 and 55 because Defendants' perceived Plaintiff to be disabled.

166.    The acts or omissions articulated in paragraphs 48 and 55 constitute adverse employment action.

167.    Defendants took adverse employment action by harassing, discriminating, and retaliating, and disparately treating Plaintiff because Defendants perceived Plaintiff to have COVID-19.

168.    No facts exist as to a change in Plaintiff's performance, his ability to perform his duties at or in excess of expectations, or any other just basis to support a finding that Plaintiff was terminated for any non-discriminatory reason.

169.    The ADA prohibits Defendants from discriminating against Plaintiff because it perceived Plaintiff to be disabled in regard to *inter alia* the terms, conditions, and privileges of Plaintiff's employment.

170.    Defendants violated the ADA by unlawfully engaging in the conduct articulated in paragraphs 48 and 55.

171.    Defendant engaged in the conduct articulated in paragraphs 48 and 55 intentionally because it knew Plaintiff was disabled or perceived Plaintiff to be disabled.

172.    Defendants purposefully, willfully, intentionally, or recklessly discriminated against Plaintiff by engaging engaged in the conduct articulated in paragraphs 48 and 55 because Defendants perceived Plaintiff to be disabled.

173.    The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an accommodation and such an accommodation enabled Plaintiff to maintain his employment without capitulating to Defendants policy-based preferences concerning absolute vaccination compliance.

174.    All allegations set forth herein constitute disability discrimination in violation of the ADA.

175.    As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT IX**
**DISPARATE IMPACT**
**Violation of the ADA**

176.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

177.    Defendants' perception that Plaintiff is a disabled person deprives and tends to deprive Plaintiff and other similarly situated individuals of a workplace free from discrimination on the basis of perceived disability in violation of the ADA's disparate-impact prohibition.

178.    The ADA makes it illegal for an employer to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, such as travel and training among others, because of such individual's disability or perceived disability.

179.    Defendants' employment practice of visibly labeling, verbally harassing, threatening, isolating, ostracizing, singling out, and restricting Plaintiff in terms of travel and

training are employment practices that cause a disparate impact on the basis of disability or perceived disability.

180.    The exclusion of disabled or perceived-to-be disabled persons from the ability to travel constitutes an employment practice as intended by the ADA in regard to disparate impact claims.

181.    The exclusion of religious disabled or perceived-to-be disabled persons from the ability to participate in or attend training classes or courses constitutes an employment practice as intended by the ADA in regard to disparate impact claims.

182.    Threatening religious employees by telling them they "will be fired" or "lose their jobs" because they are disabled or perceived-to-be disabled constitutes an employment practice as intended by the ADA regard to disparate impact claims.

183.    Objective, statistical data will demonstrate the vast disparity between the employees Defendants permit to travel and attend training sessions and employees who Defendants do not permit to travel and attend training sessions is staunchly along religious versus non-religious lines.

184.    Furthermore, the statute provides that an unlawful employment practice based on disparate impact is established when either an employee shows that an employment policy causes such a disparate impact and the employer fails to show "that the challenged practice is job related and consistent with business necessity, or the employee shows there is an alternative way to serve the stated needs, but the employer refuses it.

185.    Even if facially neutral, Defendants' categorical requirement that all employees become vaccinated without exception, notation, or addendum causes a disparate impact on Plaintiff (and any similarly situated individuals who are disabled or perceived to be disabled) by

forcing Plaintiff and other similarly situated persons to endure the harassing, retaliatory, discriminatory, coercive, and otherwise unlawful acts or omissions articulated above in paragraphs 48 and 55.

186.    The acts or omissions articulated above in paragraphs 48 and 55 were taken against Plaintiff because Plaintiff is disabled or Defendants perceive Plaintiff to be disabled.

187.    Furthermore, Defendant's categorical position on vaccination is neither required for the job in question (Signals Analyst) nor consistent with business necessity. Moreover, Defendants refused the less restrictive but feasible option of allowing Plaintiff to work in a capacity consistent with CDC guidelines (i.e., absent differentiation between vaccinated and unvaccinated persons) and in a manner Plaintiff worked prior to the implementation of the arbitrary "Vaccinate or else" policy adopted by Defendants.

188.    Defendants have caused a disparate impact by engaging in the aforesaid conduct and through the enforcement of unlawful vaccination policies and other coercive, pressure-inducing tactics intended to force Plaintiff and other disabled or perceived-to-be disabled employees into becoming vaccinated in violation of their fundamental rights to be free from workplace discrimination as protected by the ADA.

189.    All acts or omissions articulated herein, including the acts or omissions articulated in paragraphs 48 and 55 violate the ADA.

190.    As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT X
### RETALIATION

**Violation of the ADA**

191.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

192.    Defendants engaged in systemic retaliation against Plaintiff because he is disabled or Defendants perceived Plaintiff to be disabled.

193.    As a result of Plaintiff's disability or the disability Defendants perceived and continue to perceive Plaintiff to have, Defendants intentionally, deliberately, willfully, and in callous disregard, retaliated against Plaintiff by engaging in the acts or omissions articulated in paragraphs 48 and 55.

194.    The acts or omissions articulated in paragraphs 48 and 55 constitute adverse employment action and otherwise constitute retaliatory unlawful conduct in violation of the ADA.

195.    Defendants' retaliation against Plaintiff as a result of his disability or Defendants' perception that Plaintiff is disabled and Plaintiff's membership in a protected class violates the ADA.

196.    As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XI
### PERCEIVED DISABILITY DISCRIMINATION
### Violation of the Rehab Act

197.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

198.    At all times relevant to this action, Plaintiff was an employee within the meaning of the Rehab Act and the NSA, a subdivision of the DOD, was Plaintiff's employer and a covered entity as intended by the Rehab Act.

199.    Plaintiff is a qualified individual within the meaning of the Rehab Act, in that Plaintiff can perform the essential functions of a Signals Analyst with or without a reasonable accommodation as evidenced by his twenty-three (23) history working for the NSA without issue and in full satisfaction of the NSA's reasonable expectations.

200.    At all times relevant to this action, Plaintiff was a disabled person within the meaning of the Rehab Act, in that Defendants perceived Plaintiff to have COVID-19, which is a serious illness that can have long term health effects lasting more than six (6) months on those infected.

201.    COVID-19 substantially limits one or more major life activities, such as caring for oneself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.

202.    Defendants regarded Plaintiff as having such an impairment as defined by the Rehab Act and as evidenced by Defendants' decision to take adverse employment action (as articulated above) against Plaintiff.

203.    Defendants refused to permit Plaintiff to travel and attend mandatory training sessions because it perceived Plaintiff to be disabled.

204.    Vaccination is immaterial as to whether one is able to contract or transmit COVID-19, and this was known or should have been known based on a wealth of scientific studies and literature readily and publicly available evidencing the same to a reasonable degree of medical certainty.

205.     Plaintiff is disabled within the meaning of the Rehab Act because Defendants perceived Plaintiff to have COVID-19 and COVID-19 is not a transitory or minor impairment but rather, a serious illness that can have long-term health effects lasting more than six (6) months on those infected with the virus.

206.     Irrespective of whether COVID-19 substantially limits one or more of Plaintiff's major life activities, Defendants nevertheless regarded Plaintiff as having a serious physical impairment because he was not vaccinated.

207.     Defendants took adverse employment action by harassing, discriminating, and retaliating, and disparately treating Plaintiff because Defendants perceived Plaintiff to have COVID-19.

208.     No facts exist as to a change in Plaintiff's performance, his ability to perform his duties at or in excess of expectations, or any other just basis to support a finding that Plaintiff was terminated for any non-discriminatory reason.

209.     The Rehab Act prohibits Defendants from discriminating against Plaintiff because it perceived Plaintiff to be disabled in regard to *inter alia* the terms, conditions, and privileges of Plaintiff's employment.

210.     Defendants violated the Rehab Act by unlawfully engaging in the conduct articulated in paragraphs 48 and 55.

211.     Defendant engaged in the conduct articulated in paragraphs 48 and 55 intentionally because it knew Plaintiff was disabled or perceived Plaintiff to be disabled.

212.     Defendants purposefully, willfully, intentionally, or recklessly discriminated against Plaintiff by engaging engaged in the conduct articulated in paragraphs 48 and 55 because Defendants perceived Plaintiff to be disabled.

213.    The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an accommodation and such an accommodation enabled Plaintiff to maintain his employment without capitulating to Defendants policy-based preferences concerning absolute vaccination compliance.

214.    All allegations set forth herein constitute disability discrimination in violation of the Rehab Act.

215.    As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

**COUNT XII**
**HOSTILE WORK ENVIRONMENT**
**Violation of the Rehab Act**

216.    Plaintiff incorporates all preceding and subsequent paragraphs hereto as if fully set forth herein.

217.    Plaintiff is a disabled person or perceived to be a person as intended by the ADA.

218.    Plaintiff is qualified to perform the essential functions of his job with or without an accommodation.

219.    Plaintiff is an employee and Defendants are Plaintiff's employer as intended by the ADA.

220.    Defendants perceived Plaintiff to be disabled as evidenced by the change in working conditions and work environment upon learning that Plaintiff was not vaccinated.

221.    There is no rational basis for the differential treatment with which Defendants treated Plaintiff absent discriminatory intent.

222.    Defendants, with the intent to intimidate, ridicule, and insult, harass, scare, threaten, and/or coerce, created a hostile and abusive work environment by committing the acts or omissions articulated in paragraphs 48 and 55.

223.    The acts or omissions articulated in paragraphs 48 and 55 constitute adverse employment action.

224.    The acts or omissions articulated in paragraphs 48 and 55 were taken because Defendants perceive Plaintiff to be a person.

225.    Defendants did not commit the acts or omissions articulated in paragraphs 48 and 55 against non-disabled persons.

226.    Defendants did not engage in adverse employment action against non-disabled persons.

227.    The aforesaid adverse employment actions occurred because Defendants perceived Plaintiff to be a disabled person as intended by the ADA.

228.    The aforesaid adverse employment actions occurred because Defendants perceived Plaintiff to be a disabled person.

229.    All allegations set forth herein violate the ADA.

230.    As a direct and proximate result of Defendant's actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

//

//

//

## COUNT XIII
### DISPARATE TREATMENT
### Violation of the Rehab Act

231.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

232.    Plaintiff is a disabled person or Defendants perceive Plaintiff to be a disabled person as intended by the ADA.

233.    As a person perceived to be disabled, Plaintiff is a member of a protected class (disability).

234.    Plaintiff is qualified for his position of employment, and he has fully performed all duties in full satisfaction or in excess of Defendant's reasonable expectations as evidenced by Plaintiff's twenty-three (23) year employment record working for the NSA without issue.

235.    Despite being a qualified person and a member of a protected class, Defendants discriminated against Plaintiff and subjected him to disparate treatment due to his membership in a protected class of persons protected by the ADA.

236.    Specifically, Defendants engaged in the acts or omissions articulated in paragraphs 48 and 55 and such conduct was motivated in whole or in part by Plaintiff's disability and membership in a protected class of persons (disability).

237.    Defendants did not treat Plaintiff differently prior to perceiving Plaintiff to be disabled.

238.    Upon learning Plaintiff was not vaccinated, Defendants perceived Plaintiff to be a disabled person who suffers from a serious mental or physical impairment—COVID-19.

239.    COVID-19 is not a transitory or minor impairment; rather, it is a serious illness that can have long-term health effects lasting more than six (6) months on those infected with the virus.

240.    Defendants perceived Plaintiff to suffer from COVID-19, which substantially limits one or more of Plaintiff's major life activities, such as caring for oneself, performing manual tasks, eating, sleeping, breathing, learning, reading, concentrating, thinking, communicating, and working.

241.    Irrespective of whether COVID-19 substantially limits one or more of Plaintiff's major life activities, Defendants nevertheless regarded Plaintiff as having a serious physical impairment because he was not vaccinated.

242.    Defendants refused to permit Plaintiff to travel and attend mandatory training sessions because it perceived Plaintiff was disabled.

243.    Defendants engaged in the acts or omissions articulated in paragraphs 48 and 55 because Defendants' perceived Plaintiff to be disabled.

244.    The acts or omissions articulated in paragraphs 48 and 55 constitute adverse employment action.

245.    Defendants took adverse employment action by harassing, discriminating, and retaliating, and disparately treating Plaintiff because Defendants perceived Plaintiff to have COVID-19.

246.    No facts exist as to a change in Plaintiff's performance, his ability to perform his duties at or in excess of expectations, or any other just basis to support a finding that Plaintiff was terminated for any non-discriminatory reason.

247.    The ADA prohibits Defendants from discriminating against Plaintiff because it perceived Plaintiff to be disabled in regard to *inter alia* the terms, conditions, and privileges of Plaintiff's employment.

248.    Defendants violated the ADA by unlawfully engaging in the conduct articulated in paragraphs 48 and 55.

249.    Defendant engaged in the conduct articulated in paragraphs 48 and 55 intentionally because it knew Plaintiff was disabled or perceived Plaintiff to be disabled.

250.    Defendants purposefully, willfully, intentionally, or recklessly discriminated against Plaintiff by engaging engaged in the conduct articulated in paragraphs 48 and 55 because Defendants perceived Plaintiff to be disabled.

251.    The aforesaid adverse employment actions occurred because Plaintiff requested an accommodation and/or engaged in protected activity by requesting an accommodation and such an accommodation enabled Plaintiff to maintain his employment without capitulating to Defendants policy-based preferences concerning absolute vaccination compliance.

252.    All allegations set forth herein constitute disability discrimination in violation of the ADA.

253.    As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XIV
### DISPARATE IMPACT
### Violation of the Rehab Act

254.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

255.    Defendants' perception that Plaintiff is a disabled person deprives and tends to deprive Plaintiff and other similarly situated individuals of a workplace free from discrimination on the basis of perceived disability in violation of the ADA's disparate-impact prohibition.

256.    The ADA makes it illegal for an employer to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, such as travel and training among others, because of such individual's disability or perceived disability.

257.    Defendants' employment practice of visibly labeling, verbally harassing, threatening, isolating, ostracizing, singling out, and restricting Plaintiff in terms of travel and training are employment practices that cause a disparate impact on the basis of disability or perceived disability.

258.    The exclusion of disabled or perceived-to-be disabled persons from the ability to travel constitutes an employment practice as intended by the ADA in regard to disparate impact claims.

259.    The exclusion of religious disabled or perceived-to-be disabled persons from the ability to participate in or attend training classes or courses constitutes an employment practice as intended by the ADA in regard to disparate impact claims.

260.    Threatening religious employees by telling them they "will be fired" or "lose their jobs" because they are disabled or perceived-to-be disabled constitutes an employment practice as intended by the ADA regard to disparate impact claims.

261.    Objective, statistical data will demonstrate the vast disparity between the employees Defendants permit to travel and attend training sessions and employees who

Defendants do not permit to travel and attend training sessions is staunchly along religious versus non-religious lines.

262.    Furthermore, the statute provides that an unlawful employment practice based on disparate impact is established when either an employee shows that an employment policy causes such a disparate impact and the employer fails to show "that the challenged practice is job related and consistent with business necessity, or the employee shows there is an alternative way to serve the stated needs, but the employer refuses it.

263.    Even if facially neutral, Defendants' categorical requirement that all employees become vaccinated without exception, notation, or addendum causes a disparate impact on Plaintiff (and any similarly situated individuals who are disabled or perceived to be disabled) by forcing Plaintiff and other similarly situated persons to endure the harassing, retaliatory, discriminatory, coercive, and otherwise unlawful acts or omissions articulated above in paragraphs 48 and 55.

264.    The acts or omissions articulated above in paragraphs 48 and 55 were taken against Plaintiff because Plaintiff is disabled or Defendants perceive Plaintiff to be disabled.

265.    Furthermore, Defendant's categorical position on vaccination is neither required for the job in question (Signals Analyst) nor consistent with business necessity. Moreover, Defendants refused the less restrictive but feasible option of allowing Plaintiff to work in a capacity consistent with CDC guidelines (i.e., absent differentiation between vaccinated and unvaccinated persons) and in a manner Plaintiff worked prior to the implementation of the arbitrary "Vaccinate or else" policy adopted by Defendants.

266.    Defendants have caused a disparate impact by engaging in the aforesaid conduct and through the enforcement of unlawful vaccination policies and other coercive, pressure-

inducing tactics intended to force Plaintiff and other disabled or perceived-to-be disabled employees into becoming vaccinated in violation of their fundamental rights to be free from workplace discrimination as protected by the ADA.

267.    All acts or omissions articulated herein, including the acts or omissions articulated in paragraphs 48 and 55 violate the ADA.

268.    As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT XV
### RETALIATION
### Violation of the Rehab Act

269.     Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

270.    Defendants engaged in systemic retaliation against Plaintiff because he is disabled or Defendants perceived Plaintiff to be disabled.

271.    As a result of Plaintiff's disability or the disability Defendants perceived and continue to perceive Plaintiff to have, Defendants intentionally, deliberately, willfully, and in callous disregard, retaliated against Plaintiff by engaging in the acts or omissions articulated in paragraphs 48 and 55.

272.    The acts or omissions articulated in paragraphs 48 and 55 constitute adverse employment action and otherwise constitute retaliatory unlawful conduct in violation of the ADA.

273.    Defendants' retaliation against Plaintiff as a result of his disability or Defendants' perception that Plaintiff is disabled and Plaintiff's membership in a protected class violates the ADA.

274.    As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

### COUNT XVI
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Common Law**

275.    Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

    a.   Prohibiting Plaintiff from traveling for work;

    b.   Prohibiting Plaintiff from attending career development trainings;

    c.   Forcing Plaintiff to reveal medical information because he is religious while not requiring non-religious persons to report their medical information;

    d.   Requiring Plaintiff to wear a mask while not requiring others to wear masks and doing so in the absence of any policy requiring Plaintiff to wear a mask;

    e.   Forcing Plaintiff to wear visual markers that singled him out amongst his colleagues with the intent to embarrass and humiliate Plaintiff;

    f.   Attempting to remove Plaintiff from his position of employment;

    g.   Retaining copies of medical records against Plaintiff's will;

    h.   Lying to Plaintiff;

i.  Publicly demonizing Plaintiff by stating that he (Simon "John" T.) would fire anyone who sought an accommodation because "if it were up to [him], he would force the vaccine on everyone.";

j.  Threatening Plaintiff and other religious employees to the extent that the legal department had to intervene to cease the unlawful misconduct; and

k.  Intentionally creating a venomous and unhealthy work environment riddled with hostility and hate towards religious persons.

276.    As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in amount in excess of $75,000.00, including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

<u>**DAMAGES**</u>

Based on all foregoing paragraphs, and as a direct and proximate result of Defendants' conduct, Plaintiff has suffered the following injuries and incurred the following damages:

Plaintiff has been deprived of the opportunities to engage in work assignments that are necessary for competitive career advancement, which has ultimately resulted in the loss of pay and benefits;

Plaintiff has incurred significant lost wages due to the NSA prohibiting him from travel as he had done both prior to the pandemic and during the pandemic.

Plaintiff has incurred medical bills as a result of the mental stress and anguish directly and proximately caused by Defendants' actions complained of herein.

Plaintiff has suffered mental anguish, extreme emotional distress in the forms of depression, stress, anxiety attacks, loss of sleep, low self-esteem, lack of enjoyment in previously-

enjoyed recreational activities, upset stomach and related abdominal pain, indigestion, loss of appetite, frustration, feelings of loneliness, dissociation, hopelessness, loss of concentration, and repeated, uncontrollable feelings and thoughts as to why this series of events has occurred, how Plaintiff was treated at work, and the motivation behind committing the actions giving rise to this Complaint.

## **ATTORNEY'S FEES**

Plaintiff is entitled to an award of attorney's fees and reimbursement of the costs and expenses incurred in relation to prosecuting this action pursuant to Title VII, 42 U.S.C. § 2000e-5(k) as well as other applicable statutory provisions under which this action is brought.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor, and award Plaintiff such relief as to make Plaintiff whole and remedy the aforesaid violations; and hold Defendants' jointly and severely liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

a.  Temporary injunctive relief providing Plaintiff with a reasonable accommodation and otherwise non-hostile work environment;

b.  Declaratory relief finding Defendants' actions are unconstitutional;

c.  Temporary injunctive relief providing Plaintiff with a reasonable accommodation and otherwise non-hostile work environment;

d.  Compensatory damages for the injuries sustained and the medical bills and costs incurred in an amount in excess of $75,000.00 and no less than $1,000,000.00;

e.  An award of reasonable attorney's fees and litigation costs; and

      f.      Any such other relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated: March 6, 2023

                                       Respectfully submitted,

                            By:   /S/ MICHAEL A. YODER
                                   Michael A. Yoder
                                   LAW OFFICE OF MICHAEL A. YODER, PLLC
                                   2300 Wilson Blvd., Suite 700
                                   Arlington, VA 22201
                                   Tel: (571) 234-5594
                                   Fax: (571) 327-5554
                                   michael@yoderesq.com

                                   *Counsel for Plaintiff*